Michael S. Taaffe (MT 3386)
SHUMAKER, LOOP & KENDRICK, LLP
240 South Pineapple Avenue
Post Office Box 49948
Sarasota, Florida 34230-6948
(941) 366-6660;
(941) 366-3999 (fax)
Mtaaffe@slk-law.com
Trial Counsel for Plaintiff

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DLCA, LLC, | **COMPLAINT** |
|         Plaintiff, | **Case No. 2:18-cv-1867** |
| vs. | |
| BALANCE POINT DIVORCE FUNDING, LLC and STACEY NAPP, | |
|         Defendants. | |

Plaintiff, for its cause of action against Defendants, alleges that:

## JURISDICTION

1. Plaintiff brings its complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2. Plaintiff DLCA, LLC ("DLCA") is a Delaware limited liability company, with offices located in Englewood Cliffs, New Jersey. The sole member of DLCA is Palisades Collection, LLC, a limited liability company organized under the laws of Delaware and having

its principal place of business in New Jersey. The sole member of Palisades Collection, LLC is Gary Stern who is a citizen of New Jersey.

3. Defendant Balance Point Divorce Funding, LLC ("Balance Point Divorce Funding") is a Nevada limited liability company, with offices located in Beverly Hills, California. Upon information and belief, Defendant Stacey Napp is the sole owner and member of Defendant Balance Point Divorce Funding.

4. Upon information and belief, Defendant Stacey Napp is an individual resident of the State of Arizona.

## FACTS

5. Prior to and on May 17, 2012, Defendant Balance Point Divorce Funding represented to Plaintiff that it desired to obtain a loan from Plaintiff and that it was and would be financially able to repay any such loan.

6. On or about May 17, 2012, DLCA and Defendant Balance Point Divorce Funding entered into a Loan Agreement. A copy of the Loan Agreement is attached hereto as Exhibit "A".

7. DLCA and Defendant Balance Point Divorce Funding agreed that the amounts loaned to Defendants Balance Point Divorce Funding under the Loan Agreement were only to be used for "the business of investing in pending matrimonial cases." *See* Ex. A, § 1.5.

8. Pursuant to the Loan Agreement, DLCA agreed to make a loan to Defendant Balance Point Divorce Funding in the aggregate principal amount outstanding at any time of $1,000,000, or such other amount as DLCA may in its absolute discretion agree to lend.

9. The loan was to be paid in disbursements (the "Disbursements") from time to time as set forth in the Loan Agreement.

10. The Loan Agreement provided for a pre-default interest rate and a default interest rate.

11. The Loan Agreement required Defendant Balance Point Divorce Funding to pay all accrued but unpaid interest on the loans on December 31 of each year, upon each prepayment and at maturity.

12. The Loan Agreement required Defendant Balance Point Divorce Funding to repay the principal amount of all Disbursements at maturity. As defined in the Loan Agreement, the maturity date was no later than May 17, 2014.

13. Concurrent with the execution of the Loan Agreement, Plaintiff and Defendant Balance Point Divorce Funding executed a Promissory Note under which Defendant Balance Point Divorce Funding promised to pay the principal sum of up to $1,000,000 or the aggregate unpaid principal amount of all Disbursements made by DLCA to Defendant Balance Point Divorce Funding pursuant to the Loan Agreement. A copy of the Promissory Note is attached hereto as Exhibit "B".

14. Concurrent with the execution of the Loan Agreement and Promissory Note, Plaintiff and Defendant Balance Point Divorce Funding executed a Security Agreement under which Defendant Balance Point Divorce Funding granted to Plaintiff, as security for Defendant Balance Point Divorce Funding's obligations to Plaintiff, including obligations under the Loan Agreement, a security interest and a lien upon all personal property and fixtures of Defendant Balance Point Divorce Funding. A copy of the Security Agreement is attached hereto as Exhibit "C".

15. Plaintiff made Disbursements pursuant to the Loan Agreement and related documents.

16. On or about September 2, 2014, the parties executed a Letter Agreement Amending Terms of Investment (the "Letter Agreement"). Pursuant to the Letter Agreement, Plaintiff and Defendant Balance Point Divorce Funding agreed to, among other things, extend the maturity date of the Loan Agreement to August 13, 2016. A copy of the Letter Agreement is attached hereto as Exhibit "D".

17. Concurrent with the execution of the Letter Agreement, Defendant Stacey Napp executed a Personal Guaranty under which she guaranteed, among other things, repayment of the amounts due to Plaintiff under the Loan Agreement upon the occurrence of certain events. According to the Letter Agreement, if the balance due under the Loan Agreement was not repaid by August 12, 2016, then the Personal Guaranty would become effective. A copy of the Personal Guaranty is attached hereto as Exhibit "E".

18. Defendant Balance Point Divorce Funding failed to make all payments due under the Loan Agreement and related documents by August 13, 2016.

19. On November 17, 2016, Plaintiff sent Defendant Balance Point Divorce Funding a Notice of Default (the "First Notice of Default"), demanding payment of all amounts due and outstanding. A copy of the First Notice of Default is attached hereto as Exhibit "F".

20. Defendant Balance Point Divorce Funding failed to make all payments due under the Loan Agreement and related documents in response to the First Notice of Default.

21. In or about November 2016, the parties negotiated an amendment to the Loan Agreement (the "Amendment to Loan Agreement"), an amendment to the Promissory Note (the "Amended and Restated Promissory Note") and an amendment to the Personal Guaranty (the "Amended and Restated Personal Guaranty"). A copy of the Amendment to Loan Agreement, Amended and Restated Promissory Note, and Amended and Restated Personal Guaranty

(collectively, the "Amended Loan Documents") are attached hereto as Exhibits "G" through "I" respectively. Pursuant to the Amended Loan Documents, Plaintiff and Defendant agreed to, among other things, extend the maturity date of the Loan Agreement to no later than March 31, 2017.

22. Defendant Balance Point Divorce Funding failed to make all payments due under the Amended Loan Documents by March 31, 2017.

23. On April 4, 2017, Plaintiff sent Defendant Balance Point Divorce Funding a Notice of Default (the "Second Notice of Default"), demanding payment of all amounts due and outstanding.  A copy of the Second Notice of Default is attached hereto as Exhibit "J".

24. To date, Plaintiff has made Disbursements to Defendant Balance Point Divorce Funding in the amount of no less than $1,630,752.55.

25. To date, Defendant Balance Point Divorce Funding has not repaid amounts owed under the terms of the Amendment to Loan Agreement and Amended and Restated Promissory Note.

26. To date, Defendant Napp has not repaid the amounts owed by Defendant Balance Point Divorce Funding, as she is obligated to under the Amended and Restated Personal Guaranty.

27. Defendant used one or more Disbursements for purposes that were not permitted under the arrangement between Plaintiff and Defendants, including without limitation for the defense of a lawsuit filed against Defendant and for personal expenses.

28. Per the terms of the Loan Documents and Amended Loan Documents, Defendants were required to provide copies of its bank statements, and other financial records upon request from Plaintiff.

29. On September 6, 2016, Plaintiff's counsel Seth Berman emailed Defendants seeking authorization from Defendant Napp to run a credit report on Defendant Napp. Defendant Napp misrepresented reasons for refusing to authorize Plaintiff to run the credit report, claimed she would request a credit report, and ultimately failed to provide the requested credit report to Plaintiff.

30. On more than one occasion, including but not limited to September 19, 2016, Plaintiff emailed Defendants to request copies of bank statements and Defendants misrepresented that they did not have access to the requested bank statements and subsequently refused to provide copies of the bank statements or related documents.

31. Per the terms of the Loan Documents and Amended Loan Documents, Defendants were required to allow Plaintiff and its agents to inspect Defendant's properties and to examine, audit, or make copies of Defendant's books and records upon request.

32. On November 21, 2016, Plaintiff's agents Gary Stern and Bruce Foster, in addition to Plaintiff's counsel Seth Berman, placed a telephone call from Plaintiff's office in Englewood Cliffs, New Jersey to Defendant Napp and requested that Defendant Napp allow Plaintiff to audit Defendants' books and records, as provided under the Loan Documents and Amended Loan Documents. Defendants manufactured further excuses to avoid allowing Defendants to conduct an audit, inspection, or examination of Defendants' books and records.

33. Defendants falsely represented to Plaintiff or its affiliates on February 23, 2017 in Bozeman, Montana that Plaintiff and/or its affiliates were covered as additional insureds under an insurance policy maintained by Defendant Balance Point Divorce Funding.

34. Defendants subsequently negotiated a settlement with their insurance carrier without the knowledge or consent of Plaintiff or its affiliates.

## COUNT I: BREACH OF CONTRACT
### Against Defendant Balance Point Divorce Funding

35. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

36. At all times, Plaintiff performed and continues to perform its obligations in accordance with the documents executed between Plaintiff and Defendant Balance Point Divorce Funding, including the Loan Agreement, Promissory Note, Security Agreement, Letter Agreement, Amendment to Loan Agreement and Amended Loan Documents.

37. Defendant Balance Point Divorce Funding failed to pay the amounts due to Plaintiff pursuant to the documents executed between the parties, including the Loan Agreement, Promissory Note, Security Agreement, Letter Agreement, Amendment to Loan Agreement and Amended Loan Documents.

38. On more than one occasion, representatives of Plaintiff requested from Defendant copies of bank statements and other documents that Defendant is required to provide pursuant to terms of the Loan Documents and Amended Loan Documents.

39. Defendant failed to provide the requested bank statements and other documents when requested by Plaintiff.

40. On more than one occasion, representatives of Plaintiff requested that Defendant allow Plaintiff and its agents to inspect Defendant's properties and to examine, audit, or make copies of Defendant's books and records, as provided for in the Loan Documents and Amended Loan Documents.

41. Defendant refused to allow Plaintiff to make such inspection, examination, audit and copies when requested by Plaintiff.

42. As a result of Defendant's breach of the aforesaid agreements, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

## COUNT II: BREACH OF CONTRACT
### Against Defendant Napp

43. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

44. At all times, Plaintiff performed and continues to perform its obligations in accordance with the documents executed between Plaintiff and Defendant Napp, including the Personal Guaranty and the Amended and Restated Personal Guaranty.

45. Defendant Napp was on notice that the conditions in the Personal Guaranty and Amended and Restated Personal Guaranty had been triggered by Defendant Balance Point Divorce Funding's failure to pay the outstanding balances, as the First and Second Notice of Default were addressed to Defendant Napp, by virtue of her role as owner and manager of Defendant Balance Point Divorce Funding.

46. Defendant Napp failed to make due on her obligations under the Personal Guaranty and the Amended and Restated Personal Guaranty.

47. As a result of Defendant Napp's breach of the aforesaid agreements, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

## COUNT III: CONVERSION
### Against All Defendants

48. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

49. Pursuant to the documents executed between the parties, Plaintiff has the right to immediate possession of the monies due and outstanding from Defendants.

50. Defendants' continued possession and failure to repay the debt owing constitutes conversion of funds that do not belong to Defendants.

51. As a result of Defendants' actions, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

## COUNT IV: UNJUST ENRICHMENT
### Against All Defendants

52. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

53. Defendant Balance Point Divorce Funding failed to make payments as required by the documents executed between the parties, including the Loan Agreement, Promissory Note, Security Agreement, Letter Agreement, Amendment to Loan Agreement and Amended Loan Documents.

54. Defendant Napp failed to make due on her obligations under the Personal Guaranty and Amended and Restated Personal Guaranty.

55. Notwithstanding Defendants' failure to fulfill their obligations, Defendants used, and/or continue to use, the proceeds of the Disbursements and are thus receiving benefits to which they are not entitled.

56. If Defendants are permitted to retain the monies received through the Loan Documents and Amended Loan Documents without repaying Claimant, and to have use of that money without paying interest on it, they will be unjustly enriched at Plaintiff's expense.

57. As a direct and proximate result of the aforesaid actions of Defendants, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

### COUNT V: FRAUD
### Against All Defendants

58. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

59. Defendant Balance Point Divorce Funding executed the original Loan Agreement on May 17, 2012.

60. Defendant Balance Point Divorce Funding executed the amendment to the Loan Agreement on September 2, 2014.

61. Defendant Balance Point Divorce Funding executed a second amendment to the Loan Agreement in November 2016.

62. Defendant Balance Point Divorce Funding requested Disbursements under the Loan Agreement and Amended Loan Documents and falsely represented to Plaintiff that such Disbursements would be used for purposes permitted under the arrangement between Plaintiff and Defendant, specifically for purposes of investing in pending matrimonial cases.

63. Defendant used one or more Disbursements for purposes that were not permitted under the arrangement between Plaintiff and Defendants, including without limitation for the defense of a lawsuit filed against Defendant and personal expenses of Defendant.

64. Defendants falsely represented to Plaintiff or its affiliates on February 23, 2017 in Bozeman, Montana that Plaintiff and/or its affiliates were covered as additional insureds under an insurance policy maintained by Defendant.

65. Defendants subsequently negotiated a settlement with their insurance carrier without the knowledge or consent of Plaintiff or its affiliates.

66. The foregoing representations by Defendants to Plaintiff constitute material misrepresentations of a presently existing fact.

67. Defendants had knowledge the representation was false and/or made the representation with a reckless indifference to the truth. Defendants intended for Plaintiff to rely on their fraudulent representations.

68. Plaintiff acted in justifiable reliance on Defendants' fraudulent representations by making monetary disbursements to Defendant Balance Point Divorce Funding.

69. Had Plaintiff known the actual facts, it would have not made the monetary disbursements to Defendant Balance Point Divorce Funding.

70. As a direct and proximate result of the aforesaid actions of Defendants, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

### COUNT VI: FRAUDULENT CONCEALMENT
### Against All Defendants

71. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

72. Defendants had a duty to disclose to Plaintiff its intentions for the use of the disbursements made under the Loan Agreements.

73. Defendants had a duty to disclose to Plaintiff its actual insurance policy coverage maintained.

74. Per the terms of the Loan Documents, Defendants had a duty to provide copies of

their bank statements and other financial records upon request from Plaintiff.

75. Per the terms of the Loan Documents, Defendants were required to allow Plaintiff and its agents to inspect Defendant's properties and to examine, audit, or make copies of Defendant's books and records upon request.

76. Defendants requested Disbursements under the Loan Agreement and Amended Loan Documents and falsely represented to Plaintiff that such Disbursements would be used for purposes permitted under the arrangement between Plaintiff and Defendant.

77. Defendants used one or more Disbursements for purposes that were not permitted under the arrangement between Plaintiff and Defendants, including without limitation for the defense of a lawsuit filed against Defendant and personal expenses of Defendant.

78. Defendants falsely represented to Plaintiff or its affiliates on February 23, 2017 in Bozeman, Montana that Plaintiff and/or its affiliates were covered as additional insureds under an insurance policy maintained by Defendant.

79. Defendants subsequently negotiated a settlement with their insurance carrier without the knowledge or consent of Plaintiff or its affiliates.

80. On more than one occasion, Defendants failed to provide copies of Defendants' bank statements and other documents when requested by Plaintiff.

81. Defendants refused to allow Plaintiff to inspect, examine, or audit or make copies of Defendant's books and records when requested by Plaintiff.

82. The foregoing representations by Defendants to Plaintiff constitute the fraudulent concealment and representation of presently existing facts.

83. Defendants had knowledge the representations were false and/or made the representations with a reckless indifference to the truth. Defendants intended for Plaintiff to rely

on its fraudulent representations and concealment.

84. Defendants' fraudulent representation and concealment of the aforementioned facts caused Plaintiff to rely on said representations and subsequently make monetary disbursements to Defendants.

85. Had Plaintiff known the actual facts that were fraudulently concealed by Defendants, it would have not made the monetary disbursements to Defendant.

86. As a direct and proximate result of the aforesaid actions of Defendants, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

## COUNT VII:  FRAUD IN THE INDUCEMENT
### Against All Defendants

87. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

88. As described in further detail above, Defendants knowingly made false representations and fraudulent omissions during the course of pre-contractual negotiations and post-contractual dealings, including in negotiations for the Amended Loan Documents, with Plaintiff.

89. Defendants knew that these representations were false and knew or should have known that, when executing the Loan Agreements, Personal Guaranty, and Amended Loan Agreements and Amended and Restated Personal Guaranty, Plaintiff would rely on the representations of Defendants concerning their intentions for the use of funds, the status of Defendants' insurance coverage, and the Defendants' representations regarding their ability to repay any loaned amounts.

90. Defendants intended for Plaintiff to rely on its fraudulent statements and omissions when executing the initial Loan Documents and subsequent amendments to said Documents. As a result of the foregoing, Plaintiff was fraudulently induced into executing the Loan Documents and subsequent amendments with Defendants. Plaintiff would not have executed any of the aforementioned agreements but for Defendants' fraudulent conduct.

91. As a direct and proximate result of the aforesaid actions of Defendants, Plaintiff suffered damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

### COUNT VIII: BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### Against All Defendants

92. Plaintiff hereby repeats and realleges the allegations of paragraphs 1 through 34 of the Complaint as if same were fully set forth at length herein.

93. The Loan Documents and Amended Loan Documents contain an implied covenant of good faith and fair dealing, as do all contracts under Delaware law.

94. Through the breaches of contract, fraud, fraudulent concealment and/or intentional misrepresentation as alleged above, Defendants breached the covenant of good faith and fair dealing implied in the Loan Documents and Amended Loan Documents.

95. As a direct and proximate result of the breaches of the covenant of good faith and fair dealing by Defendants, Plaintiffs have not received the benefit of the bargain intended in the execution of the Loan Documents and Amended Loan Documents resulting in damages in an amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff DLCA, LLC respectfully prays that the Court:

(a) On Count I for Breach of Contract, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

(b) On Count II for Breach of Contract, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

(c) On Count III for Conversion, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

(d) On Count IV for Unjust Enrichment, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses, and/or disgorgement of all proceeds and profits from those proceeds wrongfully procured by Defendants;

(e) On Count V for Fraud, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

(f) On Count VI for Fraudulent Concealment, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

(g) On Count VII for Fraud in the Inducement, award monetary damages against

Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

 (h) On Count VIII for Breach of Covenant of Good Faith and Fair Dealing, award monetary damages against Defendants, jointly, severally and/or in the alternative, in amount to be determined at trial but, in any event, no less than $1,630,752.55, plus continuing interest and expenses;

 (i) Award punitive and exemplary damages in an amount to be determined at trial according to proof;

 (j) Award Plaintiff its costs and expenses against Defendants, jointly, severally and/or in the alternative, including, but not limited to, reasonable attorneys' fees, incurred as a result of Defendants' breaches as aforesaid, as provided for in numerous agreements between the Parties, including but not limited to the Loan Agreement, § 9.4, and the Amended and Restated Personal Guaranty;

 (k) Award Plaintiff pre-judgment and post-judgment interest; and

 (l) Award Plaintiff any other and further relief to which it is entitled.

Dated: February 8, 2018
Respectfully Submitted,

                Shumaker, Loop & Kendrick, LLP
                By: *s/ Michael S. Taaffe*
                Michael S. Taaffe (MT 3386)
                SHUMAKER, LOOP & KENDRICK, LLP
                240 South Pineapple Avenue
                Post Office Box 49948
                Sarasota, Florida 34230-6948
                (941) 366-6660;
                (941) 366-3999 (fax)
                Mtaaffe@slk-law.com
                Attorney for Plaintiff